IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DALE BERMAN, BENJAMIN DAVIDSON
and LYNNE INGRAM,

    Plaintiffs,

v.                                           No. 15-1255

UNIMIN CORPORATION,

    Defendant.

---

ORDER ON DEFENDANT'S MOTIONS IN LIMINE

---

Before the Court are two motions in limine filed on October 1, 2016, by the Defendant, Unimin Corporation ("Unimin"). (Docket Entry ("D.E.") 26-27.) According to the complaint, Plaintiff Dale Berman[1] was performing his duties as an engineer on a CSX Transportation ("CSX") train running in the area of an industrial plant operated by the Defendant near Camden, Tennessee, on October 26, 2014. The property, on which Unimin produced nonmetallic industrial materials, contained a retention pond protected by a levee. As the train passed by, the levee suddenly gave way, causing water to rush out and derail the train. Berman seeks damages based on Unimin's negligence.

In its first motion in limine (D.E. 26), Unimin requests exclusion or limitation of certain testimony by Dr. Gary Lee, a psychologist who treated Berman beginning in January 2016 and diagnosed him with Post-Traumatic Stress Disorder (PTSD). According to the evidence presented, when the train derailed, the windshield broke and Plaintiff was pinned underneath water and dirt that entered the cab. He climbed out of the locomotive's side window and sat atop

---

[1]The pending motions refer only to Berman.

the train, which was then resting on its side, until he was rescued and taken to a hospital. Thereafter, he made several unsuccessful attempts to return to work on a train but was too anxious to continue. Berman eventually obtained a commercial driver's license (CDL) and took a job driving a dump truck and operating heavy equipment, which paid less than what he made as a train engineer.

On June 3, 2016, Dr. Lee spoke with Plaintiff's attorney by telephone. The psychologist recalled they talked about his contact and involvement with Berman, as well as a tentative prognosis based on the three sessions he had conducted up to that time with the Plaintiff. Dr. Lee stated in his deposition that "I had only seen him three times to that point, and so there was not a lot of information I could provide about, you know, is he going to get better, is he -- is he -- is he going to get worse, that type of thing." (D.E. 31-1 at PageID 350.)

The Plaintiff's expert disclosure with respect to Dr. Lee, dated June 17, 2016, stated as follows:

> Dr. Gary Lee is a psychologist in private practice in Hendersonville, Tennessee. Dr. Lee holds a doctorate in clinical psychology from the Illinois School of Professional Psychology in Chicago, Illinois, and a bachelor of arts in psychology from the University of Mississippi in Oxford, Mississippi. Dr. Lee is a licensed psychologist in Tennessee. . . .
>
> Dr. Lee is a treating psychologist for Mr. Berman, and was not retained or specially employed to provide expert testimony in the case. Dr. Lee is expected to testify consistently with the records from his evaluations and treatment of Mr. Berman. Dr. Lee is expected to testify that Mr. Berman has suffered a mental health injury caused by the train derailment on October 26, 2014. Mr. Berman's mental health injury is permanent, though Mr. Berman would more likely than not benefit from continuing therapy including Eye Movement Desensitization and Reprocessing (EMDR). Even with additional treatment, however, it is more likely than not that this injury will prevent Mr. Berman from working as an engineer on a train again.
>
> Dr. Lee holds these opinions to a reasonable degree of professional certainty.

\* \* \*

> Dr. Lee may also testify regarding opinions offered by any expert witness called by Defendant and may address any additional fact testimony relevant or [sic] other evidence presented subsequent to this expert disclosure. . . .

(D.E. 26-2 at PageID 90-91.)

In his deposition taken September 7, 2016, Dr. Lee recalled that Berman shared with him his experiences in attempting to return to work on trains after the accident, stating that "[h]e indicated that he had tried on several occasions, I think one occasion where he threw up either on the way or when he got there to the yard and was trying to get on the train. And I think he actually did get on the train at one point and experienced significant anxiety." (D.E. 31-1 at PageID 292.) During the course of his counseling, Dr. Lee spoke with the Plaintiff about the EMDR technique, used to assist patients in reprocessing trauma to lessen its effects. The psychologist performed the procedure on one occasion -- July 7, 2016, which Berman reported was helpful.

When questioned concerning the likelihood that his patient could return to work on a moving train, he offered the following testimony:

> . . . I think that the -- the difficulties that he has experienced anytime he is -- has come near a train and tried to attempt to go near a train. I think there is also a time period -- he experienced difficulties, anxiety, kind of panic.
>
> And I think there was -- a couple of months ago I think he tried to go near a train that he saw, like, in Gallatin[, Tennessee], I think. It was stopped in one of the -- the yards. And he tried to go and see what -- what kind of experience he would have.
>
> And as he got near it, he just said he just couldn't do it. And so that -- I think that would probably be one of the more difficult ones to -- to subside. And I think that that would take repeated exposure over time of him doing that, but I -- I -- I don't see that as likely.

(*Id.* at PageID 312-13.) It was Dr. Lee's expressed opinion in his deposition that, had the derailment never occurred, he could see Berman continuing to work as a train engineer but, after

the accident, his prospects of returning to that job were "highly unlikely" as a result of his PTSD. (*Id.* at PageID 311-12.)

Dr. Lee confirmed that, in progress notes reflecting the course of his treatment of Plaintiff, he recorded no opinions concerning his ability to return to work on a moving train. Nor did he report any work restrictions or disability. He conceded that vocational testing was not his area and acknowledged he had never investigated the types of jobs available on a moving train.

The psychologist testified that it was his experience that patients achieved progress from ongoing EMDR sessions. He further stated that he could develop a plan for desensitization that would allow Berman to return to his old job but had not done so because he had been concentrating on other stressors in his patient's life, including his marriage, stepchildren and imminent divorce. At the time of his deposition, the psychologist had not concluded that Berman had reached the level of maximum medical improvement, had not completed treatment and had not discharged Plaintiff from his care.

It is the position of the Defendant that Dr. Lee's testimony concerning Berman's future employment prospects with the railroad provides an insufficient basis for admission at trial. The proponent of expert testimony has the burden of showing that the evidence is admissible. Fed. R. Evid. 104(a); *E.E.O.C. v. Tepro, Inc.*, 133 F. Supp. 3d 1034, 1040 (E.D. Tenn. Sept. 28, 2015), *recons. denied* 2015 WL 12658237 (E.D. Tenn. Oct. 21, 2015). Such evidence is governed by Rule 702 of the Federal Rules of Evidence, which provides that

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if[] (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In addition, the court has the authority under Fed. R. Evid. 403 to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues[ or] misleading the jury[.]"

The court's determination of whether expert testimony is admissible under the rule proceeds in three steps: (1) "the witness must be qualified," (2) "the testimony must be relevant," and (3) "the testimony must be reliable." *United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016), *reh'g en banc denied* (Sept. 27, 2016). The Defendant does not appear to challenge Dr. Lee's qualification to testify as a treating physician with respect to Plaintiff's treatment and the relevance of that testimony, or his diagnosis of PTSD caused by the accident. Rather, as noted above, Unimin objects to his opinion concerning Plaintiff's "vocational employment possibilities," specifically, the unlikelihood that Berman can return to work on a moving train, which Defendant argues is beyond his area of expertise. Therefore, it avers, this testimony is unreliable.

The district court is granted "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable, provided that the gatekeeping mandate of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993)[], is followed to ensure the reliability and relevancy of expert testimony." *Rios*, 830 F.3d at 413 (internal quotation marks omitted). The reliability inquiry focuses on the principles and methodology that underlie the evidence more than the conclusions it generates. *Vaughn v. Konecranes, Inc.,* 642 F. App'x 568, 577 (6th Cir. 2016).

In *Daubert*, the Court identified a nonexhaustive list of factors to assist courts in assessing the reliability of an expert opinion, including (1) "whether a theory or technique can be (and has been) tested," (2) "whether the theory has been subjected to peer review and

publication," (3) whether the technique has "a high known or potential rate of error," and (4) "whether the theory or technique enjoys 'general acceptance' within a 'relevant scientific community.'" *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429-30 (6th Cir. 2007) (citing *Daubert*, 509 U.S. at 592-94) (alterations & some internal quotation marks omitted). Whether the court applies these factors depends "on the nature of the issue, the expert's particular expertise and the subject of his testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).

Rejection of expert testimony is the exception, not the rule. *United States ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land in Tenn.*, 821 F.3d 742, 749 (6th Cir. 2016). Any weakness in the underlying factual basis goes to the weight of the evidence, not its admissibility. *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). "Accordingly, Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *1.72 Acres of Land in Tenn.*, 821 F.3d at 749 (internal quotation marks omitted).

"[A] treating physician may provide expert testimony regarding a patient's illness, the appropriate diagnosis for that illness, and the cause of the illness." *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 426 (6th Cir. 2009). It is also "within the normal range of duties for a health care provider to develop opinions regarding . . . prognosis during the ordinary course of an examination." *Fielden v. CSX Transp., Inc.,* 482 F.3d 866, 870 (6th Cir. 2007). "To assume otherwise is a limiting perspective, which narrows the role of a treating physician." *Id.* That said, even if allowed as properly within the scope of his treatment, testimony of a treating physician is not immune to *Daubert*. *In re Aredia & Zometa Prods. Liab. Litig.*, 483 F. App'x

182, 187 (6th Cir. 2012), *Avendt v. Covidien Inc.*, 314 F.R.D. 547, 561 (E.D. Mich. 2016). A medical expert "may be qualified by personal knowledge and experience, but such experience-based testimony must be the product of the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Avendt*, 314 F.R.D. at 563 (internal quotation marks omitted). When a physician strays from such knowledge and experience, his testimony "becomes less reliable, and more likely to be excluded under Rule 702." *Gass*, 558 F.3d at 428. Rule 702 requires more than subjective belief or unsupported speculation. *In re: Dow Corning Corp.*, 541 B.R. 643, 652 (E.D. Mich. 2015), *aff'd sub nom. Ezra v. DCC Litig. Facility, Inc.*, ___ F. App'x ___, 2016 WL 4046899 (6th Cir. July 27, 2016), *petition. for cert. filed* (U.S. Dec. 7, 2016) (No. 16-740).

While a treating physician may testify as to his patient's prognosis, it is unclear to the Court whether Dr. Lee's opinion with respect to Berman's ability to work on a moving train rests upon a reliable foundation. Accordingly, the Court will conduct a *Daubert* hearing on the matter, to be set by separate docket entry. Following the hearing, the Court will determine whether the motion (D.E. 26) should be granted.

The second motion in limine (D.E. 27) pertains to the expert testimony of Robert McLeod. McLeod is an economist with a PhD in finance and thirty-five years of experience testifying in litigation matters regarding economic damages. He also teaches graduate-level finance and economics courses at the University of Alabama. On June 16, 2016, he issued a report entitled "Personal Injury Economic Damages Report," in which he estimated future economic damages to Berman at $1,613,185. Apparently, the expert used the wrong birthdate for the Plaintiff in making his initial estimate and, when notified by counsel of the mistake, issued a second report on July 20, 2016, calculating damages at $2,385,596. Unimin seeks

exclusion of the reports pursuant to Rule 702 and a hearing in accordance with Fed. R. Evid. 104.

The Defendant claims the reports are unreliable because they merely calculated Plaintiff's lost earning capacity based on his actual pre-injury earnings as a railroad engineer compared to his actual post-injury wages as a truck driver/heavy equipment operator without taking into account the fact that Berman testified in his deposition that he wanted to return to railroad work and without conducting research on the types of jobs available or reviewing Berman's deposition testimony, medical records or counseling records. This "single assumption" approach, Unimin submits, falls short of the requirements of Rule 702 and *Daubert*.

The expert was asked to assume that Berman returned to work on April 25, 2016, as a truck driver making $12.50 per hour, adjusted for wage increases over time, for an average of twenty-nine hours per week and that he would continue doing so for the rest of his working life. McLeod based his calculations on information provided by Plaintiff's counsel. He reviewed Berman's W-2s for the pre-injury years 2010 through 2014 and documentation concerning monthly costs of insurance and payroll taxes by CSX for the years 1996 through 2013 in conducting his calculations. According to his deposition, McLeod analyzed average annual salary increases in the transportation industry provided by the U.S. Department of Labor -- Bureau of Labor Statistics as well as seven different work life studies using Berman's work life expectancy. The interest rate used to compute present values was a decade average from the Board of Governors of the Federal Reserve System. Unimin has challenged none of these methods of calculating damages.

The expert arrived at his estimates utilizing a software program called "Damages Advocate," the accuracy of which he verified by creating a separate Excel spreadsheet. The

Defendant is critical of the use of the software, but has cited to no cases excluding an expert report based upon its utilization. It also submits that use of the computer program "require[d] no expertise or analysis specific" to this case and, thus, would not assist the jury. To the extent it is suggesting that the factfinder could have sifted through the evidence and determined a fact at issue on its own, admissibility is not to be determined on that basis. Instead, expert testimony is admissible if it will help the trier of fact understand the evidence or decide a fact in issue. "Issues of economic loss and how such loss is calculated are not everyday issues for most laymen." *Crouch v. John Jewell Aircraft, Inc.*, Civil Action No. 3:07-CV-638-DJH, 2016 WL 157464, at *13 (W.D. Ky. Jan. 12, 2016), *recons. denied*, 2016 WL 1178024 (W.D. Ky. Mar. 22, 2016).

With respect to Berman's testimony, the movant argues that McLeod impermissibly disregarded the "interim" nature of the trucking job, as it was characterized by Berman, and his hope to return to railroad work. It cites to Plaintiff's deposition testimony that he was looking for a railroad job, that he was waiting for a position with the railroad to "open up," that he had been offered vocational training, and that he had not actively pursued permanent job opportunities outside the railroad. As noted above, the expert was asked to assume that Plaintiff would spend the rest of his working life in a truck driving/heavy equipment operation job. "An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record." *McLean v. 988011 Ontario, Ltd.,* 224 F.3d 797, 801 (6th Cir. 2000). At the time the opinion was proffered, Berman worked as a truck driver/heavy equipment operator. He did not have a job at the railroad or any clear prospects for one. Any opinion as to future earnings from a job Plaintiff does not have would be mere speculation on McLeod's part.

9

Defendant also takes issue with the expert's failure to research the types of jobs available to the Plaintiff. While a vocational counselor might be able to offer testimony on this issue, such an opinion is, according to McLeod's testimony, outside his area of expertise.

Unimin further contends that, where information and assumptions are supplied by counsel to an expert, he *must* independently verify the facts provided, citing to *MDG International, Inc. v. Australian Gold, Inc.*, No. 1:07-cv-1096-SEB-TAB, 2009 WL 1916728 (S.D. Ind. June 29, 2009). In that case, which has not been cited by a court in this Circuit, the expert calculated lost profits based on an assumed mark-up percentage that was incorrect. Although both he and counsel possessed information showing the correct mark-up amount, the expert never independently verified the basis for the assumption he made, despite his deposition testimony that verification of such data was his standard practice. Here, nothing has been presented to indicate that McLeod, or economists generally, typically independently verify the type of information relied on in this case or, for that matter, peruse medical records and deposition testimony.

The movant complains that McLeod did not review Plaintiff's most recent tax returns. Although the expert testified in his deposition that he would have liked to see Berman's 2015 tax documents, it appears from the record that Plaintiff did not receive his CDL or begin his employment with the trucking company until 2016. Further, there is no indication that he has yet received his 2016 W-2.

In addition, Defendant takes issue with the assumption that Berman works twenty-nine hours per week when he testified in his deposition that, if it was not raining, he worked forty-five to fifty hours per week. Unimin has pointed to nothing indicating that this conflict would be sufficient to support exclusion.

Rule 702 "does not require anything approaching absolute certainty." *Visteon Global Techs., Inc. v. Garmin Int'l, Inc.*, Case No. 10-cv-10578, 2016 WL 5956325, at *14 (E.D. Mich. Oct. 14, 2016) (quoting *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671-72 (6th Cir. 2010)). The court is not to determine whether the opinion is correct, but rather whether it "rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Id.* (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008)). The accuracy of data underlying a reliable methodology normally goes to the weight of the opinion and not its admissibility.

Plaintiff has borne his burden of establishing that McLeod's opinion is reliable and is based on more than unsupported guesses. The scope of the opinion and the criticisms cited by the Defendant go to its weight, rather than its admissibility. The motion to exclude or limit his opinion (D.E. 27) is, therefore, DENIED. Further, as the Court finds it unnecessary, Defendant's request for a hearing is also DENIED.

IT IS SO ORDERED this 14th day of December 2016.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE